**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-01059-NYW-STV

WHALE FAMILY INVESTMENTS, LP, and
RANSLEM CAPITAL, L.P.,

    Plaintiffs,

v.

CONCORD01, LLC,
1001088 ALBERTA, INC.,
FLIGHT LLC,
ST. JOHN'S HOLDING, LLC,
KARRY WARBURTON,
WILLIAM WARBURTON,
CONCORDR01, LLC,
LINNCO34, LLC, and
VODICKA01, LLC,

    Defendants.[1]

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Defendants' Motion to Transfer and Supporting Memorandum of Law ("Motion to Transfer"), [Doc. 18, filed June 30, 2023], and Defendants' Amended Motion to Dismiss Complaint and Supporting Memorandum of Law ("Motion to Dismiss"), [Doc. 21, filed July 6, 2023], filed by Defendants Concord01,

---

[1] Plaintiffs initially sued the Trustee of the Warburton Dynasty Trust and the Trustee of the Warburton IV Irrevocable Trust, noting that their "identit[ies] . . . [were] not known at this time," but Plaintiffs "[would] supplement" them. [Doc. 1 at ¶¶ 9–10]. Defendants subsequently identified the Trustee of the Warburton Dynasty Trust as Karry Warburton and the Trustee of the Warburton IV Irrevocable Trust as William Warburton. *See* [Doc. 16 at 2]. Plaintiffs have not contested these identifications. *See generally* [Doc. 24; Doc. 25]. The Clerk of Court is **DIRECTED** to update the case caption, consistent with this Order, to replace the Trustee of the Warburton Dynasty Trust with Karry Warburton and the Trustee of the Warburton IV Irrevocable Trust with William Warburton.

LLC; 1001088 Alberta, Inc.; Flight LLC; St. John's Holding, LLC; Karry Warburton; William Warburton; ConcordR01, LLC; LINNCO34, LLC; and Vodicka01, LLC ("Defendants"). Plaintiffs Whale Family Investments, LP and Ranslem Capital, L.P. ("Plaintiffs") have responded, [Doc. 24; Doc. 25], and Defendants have replied, [Doc. 26; Doc. 31]. The Court finds that oral argument will not materially assist in the disposition of these motions. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion to Dismiss and **DENIES as moot** the Motion to Transfer.

## BACKGROUND

The Court takes the following allegations from the Original Complaint ("Complaint"), [Doc. 1, filed April 26, 2023], as true.[2] Plaintiffs invested in non-party Concord Energy Holdings LLC (the "Company"), a business entity that manages and markets natural gas and crude oil, in 2011. [*Id.* at ¶¶ 15, 17]. At that time, the Company "was a relatively new and unproven venture." [*Id.* at ¶ 17]. In exchange for their unspecified investment, Plaintiffs received membership interests in the Company known as "Units." Specifically, Plaintiff Whale Family Investments, LP received 9,660 Class B Units, and Plaintiff Ranslem Capital, L.P. received 9,608.94 Class B Units. [*Id.*]. The Company amended its operating agreement at the time of Plaintiffs' investment ("2011 OA"), including by providing Class B holders a seat on the Board of Directors ("Board") and requiring Class B's approval to amend the 2011 OA "in a manner that would adversely

---

[2] "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

2

and disproportionately affect the holders of the Class B Units." [*Id.* at ¶¶ 20, 30]. Plaintiffs "relied upon" the latter protection, found in Section 14.1 of the 2011 OA, when they invested in the Company. [*Id.* at ¶ 29].

Defendants are the Company's Class A Unit holders. [*Id.* at ¶ 22]. Together, Defendants own 62,306.65, or 64.2%, of the Company's total voting Units. [*Id.*]. On or about December 14, 2022, the Company "purportedly voted" to amend the 2011 OA "in an attempt to create" a document titled Second Amended and Restated Limited Liability Company Agreement ("2022 OA").[3] [*Id.* at ¶ 21]. At that time, Plaintiffs held more than 86% (19,268.94) of the vested Class B Units. [*Id.* at ¶ 31]. According to the Complaint, Plaintiffs did not consent to the 2022 OA, and the Board never sought their agreement. [*Id.* at ¶ 36]. Instead, the Board took the position that the changes in the 2022 OA did not require Class B's approval under Section 14.1 of the 2011 OA because they "d[id] not single out any class of unit holder."[4] [*Id.* at ¶ 37].

Plaintiffs allege that the 2022 OA was improperly approved without Class B's consent, as the changes, in Plaintiffs' view, adversely and disproportionately affected their position as holders of Class B Units, thus implicating Section 14.1 of the 2011 OA. [*Id.* at

---

[3] Plaintiffs refer to the 2022 OA as the "2022 Proposed Amendment." *See, e.g.*, [Doc. 1 at ¶ 21]. For simplicity, and without suggesting the validity of any or all of its changes, the Court refers to the revised document as the "2022 OA."

[4] Plaintiffs attach a redlined document showing the changes between the 2011 OA and 2022 OA to the Complaint. *See* [Doc. 1-1]. Defendants do not appear to dispute the authenticity of the redline, but they separately attach the 2011 OA and 2022 OA to their Motion to Dismiss. *See* [Doc. 21-1; Doc. 21-2]. The aforementioned redline is an exhibit to the Complaint, and Plaintiffs do not challenge the authenticity of the documents Defendants submitted in connection with the Motion to Dismiss—which are central to and referenced in the Complaint—so all these documents are properly considered within the context of the Motion to Dismiss. *See Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

¶¶ 32–35]. Of the myriad modifications marked in the redlined version, *see* [Doc. 1-1], the Complaint focuses on two. First, Plaintiffs allege that the 2022 OA "sought to systematically deprive Class B Unit holders of their rights and ability to participate on the Board and reserve that right solely for Class A Unit holders." [Doc. 1 at ¶ 32]. Second, the 2022 OA "purportedly gave the Board—now guaranteed to be comprised solely of Class A Unit holders or their representative—the right to demand mandatory redemption of units at a value that is solely determined by the Board—effectively Class A unit holders." [*Id.*]; *see also* [Doc. 1-1 at 24–25 (amendment concerning mandatory redemption), 25–26 (amendment concerning Board membership)].

On January 6, 2023, the Board issued each Plaintiff a Notice of Redemption that relied upon the mandatory redemption provision added to the 2022 OA. [Doc. 1 at ¶¶ 42–43]. The Company demanded redemption of all Whale Family Investments, LP's Class B Units for $16,134,624.21, and all Ranslem Capital, L.P.'s Class B Units for $16,049,341.20, with both redemptions effective January 13, 2023. [*Id.* at ¶ 44]. Plaintiffs allege that these amounts "were significantly below the fair market value of Plaintiffs' Units under standard valuation methodologies, considering the Company's assets, financial position, anticipated future earnings stream, and cash flows, and compared to similarly situated companies." [*Id.* at ¶ 47]. Having allegedly "forcibly deprived Plaintiffs of their rights and interests as members of the Company," Defendants have since withheld distributions from Plaintiffs and prevented them from exercising rights as Class B Unit holders. [*Id.* at ¶¶ 48–49].

Plaintiffs filed this action on April 26, 2023, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. [*Id.* at ¶ 12]. The Complaint includes claims

for breach of contract, breach of fiduciary duty, unjust enrichment and imposition of constructive trust, and civil conspiracy, as well as a request for declaratory relief. [*Id.* at 13–18]. Plaintiffs seek damages, a constructive trust, and declarations that the 2022 OA is void and that the mandatory redemption of Plaintiffs' Class B Units was ineffective, among other forms of relief. See [*id.* at 18–19]. Defendants subsequently moved to dismiss the case[5] or have it transferred to the United States District Court for the District of Delaware. [Doc. 18; Doc. 21]. Those motions are now ripe for decision.

## LEGAL STANDARD

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v.*

---

[5] On June 30, 2023, Defendants filed a Motion to Dismiss Complaint and Supporting Memorandum of Law, which the Court struck for failure to comply with this Court's Uniform Civil Practice Standards. [Doc. 19; Doc. 20]. The instant Motion to Dismiss, which is materially identical, followed. *See* [Doc. 21 at 1 n.1].

5

*Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quotation omitted).

Jurisdiction encompasses standing. "The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (cleaned up). Article III standing, or constitutional standing, is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original)). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan*, 504 U.S. at 561. Meanwhile, the prudential standing doctrine is comprised of "judicially self-imposed limits on the exercise of federal jurisdiction that are founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quotation omitted). This doctrine encompasses various limitations on the exercise of jurisdiction, including the general prohibition against a litigant asserting another person's legal rights. *Wilderness Soc'y*, 632 F.3d at 1168. But, unlike constitutional standing, "prudential standing is not a jurisdictional limitation and may be waived." *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quotation omitted).

## ANALYSIS

The Court limits its discussion of the Motion to Dismiss to Defendants' Article III standing argument, which pertains to all the asserted claims and which the Court finds

dispositive. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (courts must analyze standing before reaching merits).[6] The Court recognizes, and Defendants do not dispute, that Plaintiffs have asserted an injury for purposes of standing by claiming that their Class B Units were forcibly redeemed for less than their actual value. *See* [Doc. 1 at ¶¶ 42–44, 47; Doc. 25 at 12]. Instead, Defendants focus on the traceability requirement. To satisfy standing's traceability prong, the injury at issue must be "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1035 (10th Cir. 2013) (cleaned up) (quoting *Lujan*, 504 U.S. at 560). "[T]he traceability component of the standing test contemplates a causal relationship between the injury and the defendants' challenged acts." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quotation omitted); *see also California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (injury must be "fairly traceable to the defendant's allegedly unlawful conduct" (quotation omitted)).

In the Motion to Dismiss, Defendants argue that Plaintiffs "cannot show that their injuries are fairly traceable to the *challenged action* of Defendants." [Doc. 21 at 12 (emphasis added)]. As relevant here, Defendants' view is that, "[r]egardless of the amendments about which Plaintiffs complain, Defendants had sufficient voting power to adopt a plan to redeem Plaintiffs' units" under the 2011 OA. [*Id.* at 13]. Defendants point

---

[6] The Parties do not take any position on whether the Court must decide Defendants' standing argument before their transfer argument. The Court's independent research suggests that either order is permissible. *See ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1200 (10th Cir. 2011); *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Based on the "considerations of convenience, fairness, and judicial economy" that inform this exercise of judicial discretion, *Sinochem Int'l Co. Ltd.*, 549 U.S. at 432, the Court begins and ends with standing.

to a provision of the 2011 OA that requires 60% approval of the Company's Unit holders to repurchase membership interests, [*id.* (citing [Doc. 21-1 at 26])], and note that Plaintiffs have alleged that Defendants' membership interest exceeds that threshold, [*id.* (citing [Doc. 1 at ¶ 22])].

The Court recognizes the potential complexity of a traceability analysis, *cf.* 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.5 (3d ed. Sept. 2023 update), but the Court is bound by the issues and arguments as the Parties have framed them. Here, Plaintiffs' entire response to Defendants' standing argument is as follows:

> Defendants argue that *Plaintiffs' injury—the deprivation of the interest in the company at unjust redemption prices*—is not fairly traceable to the 2022 Proposed Amendment because "Defendants had sufficient voting power to adopt a plan to redeem Plaintiffs' units" under the 2011 Company Agreement. *Even if this were true, Defendants had no right to redeem Plaintiffs' interests in the company at prices that were significantly below fair market value.* This purported "right" to redeem Plaintiffs' interest in the company at below fair market value was created solely by the *2022 Proposed Amendment which modified the methodology for unit valuation from fair market value to book value.* Clearly, *Plaintiffs were injured by being deprived of their interest and equity in the Company at an unjust amount.* Accordingly, Plaintiffs' injuries are fairly traceable to their breach of contract claim and Defendants' arguments fail here as well.

[Doc. 25 at 12 (emphasis added)]. In the course of concluding that their injuries are fairly traceable to their breach of contract claim, (1) Plaintiffs identify their only injury for standing purposes as the mandatory redemption of their Class B Units at the wrong price[7]; (2) Plaintiffs do not dispute that Defendants could have redeemed Plaintiffs' Units under the 2011 OA or that this fact is relevant; (3) Plaintiffs argue that the traceability

---

[7] The Court accordingly need not consider Defendants' arguments about traceability in the context of the amendment concerning the Board's composition. *See* [Doc. 21 at 13–14].

inquiry is nonetheless satisfied because of a new Unit valuation method supposedly permitted by the 2022 OA; and (4) Plaintiffs identify the change in valuation method as favoring book value over fair market value.  [*Id.*].

Thus, Plaintiffs' only argument with respect to standing is that their injury is fairly traceable to the 2022 OA because, following the amendments, the redemption price for their Class B units was no longer "fair market value" under the 2011 OA, but rather "book value" under the 2022 OA.[8]  [*Id.*].  However, as Defendants point out, and as Plaintiffs do not meaningfully dispute, the 2011 OA did not specify *any* redemption price in the relevant provisions and, to the extent the 2011 OA called for fair market value, as Plaintiffs argue, the 2011 OA defined "fair market value" as a number set by the same majority of Unit holders required to approve the redemption.  *See* [Doc. 21 at 13 n.9]; *see also* [Doc. 21-1 at 9, 26].  Plaintiffs' attempt to distinguish the redemption of their shares under the 2022 OA from their redemption under the 2011 OA—their sole argument on traceability—thus falls short.  Moreover, Plaintiffs provide the Court with insufficient factual averments and no legal authority whatsoever for the proposition that Defendants' challenged conduct caused their injury here.  *Cf.* [Doc. 31 at 3 ("Plaintiffs do not explain how the amendments about which they complain caused their alleged harm, and cite no authority to support their standing." (emphasis omitted))].

---

[8] As Plaintiffs neither dispute Defendants' ability to forcibly redeem Plaintiffs' membership interests under the 2011 OA, nor contest the legal effect of that fact in the traceability context, *see* [Doc. 25 at 12], the Court declines to consider the interpretation of the 2011 OA, or related legal questions, at any length.  Plaintiffs bear the burden to show that they have standing, so these aspects of the issue are not properly before the Court at this juncture.

9

"[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotation and alteration omitted). So bound, the Court must respectfully agree with Defendants that "Plaintiffs have not shown how the *amendments* plausibly caused them the harm about which they are complaining." [Doc. 21 at 13 (emphasis in original)]. It is Plaintiffs' burden to show standing. *See Lujan*, 504 U.S. at 561; *see also N. Laramie Range All.*, 733 F.3d at 1034 ("The party invoking federal jurisdiction bears the burden of establishing traceability."). Plaintiffs fail to meet that burden because, even making inferences in their favor, they cannot demonstrate—and largely do not try to demonstrate—that the "unfettered power to materially and adversely affect the rights of Class B Unit holders" about which they complain in this litigation, [Doc. 1 at ¶ 24], was not already held by Defendants under the 2011 OA. Accordingly, "there remains the question whether" the mandatory redemption of Plaintiffs' Class B Units "can be said to have resulted, in any concretely demonstrable way," from Defendants' allegedly wrongful conduct. *Warth*, 422 U.S. at 504.

Based on Plaintiffs' failure to meet their burden to show that their injury is fairly traceable to Defendants' challenged conduct, the Motion to Dismiss is respectfully **GRANTED**, and the Complaint is **DISMISSED without prejudice**.[9] The Motion to Transfer is **DENIED as moot**.

---

[9] Defendants seek dismissal with prejudice, [Doc. 21 at 14], but a dismissal for lack of jurisdiction must be without prejudice because the court "lack[s] jurisdiction to make a determination on the merits." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Defendants' Amended Motion to Dismiss Complaint and Supporting Memorandum of Law [Doc. 21] is **GRANTED**;

(2) The Original Complaint [Doc. 1] is **DISMISSED without prejudice**;

(3) Defendants' Motion to Transfer and Supporting Memorandum of Law [Doc. 18] is **DENIED as moot**;

(4) Defendants are awarded their costs under Federal Rule of Civil Procedure 54 and Local Rule 54.1; and

(5) The Clerk of Court is **DIRECTED to TERMINATE** the case.[10]

DATED: December 6, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[10] Plaintiffs do not seek leave to amend. *See generally* [Doc. 25]. In the absence of a request to amend, the district court may dismiss the action, rather than sua sponte grant leave to amend. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time. Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss." (citations omitted)); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A] court need not grant leave to amend when a party fails to file a formal motion.").